**THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **LAURENCE WILLIAMS,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No.** |
| | § | |
| | § | |
| **SUPERIOR KATY CAR WASH, LLC** | § | |
| **Defendant.** | § | **JURY DEMANDED** |
| | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

LAURENCE WILLIAMS., Plaintiff in the above numbered and styled cause, files his Original Complaint complaining of **SUPERIOR KATY CAR WASH, LLC,** Defendant herein, and in support thereof shows this Court as follows:

This is a suit in law and in equity, authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII") and Section 1981 of the Civil Rights Acts of 1866, 42 U.S.C. §1981 ("Section 1981"). The jurisdiction of this Court is invoked to secure the protection of and redress the deprivation of rights secured by these laws protecting people such as the Plaintiff from employment discrimination, including termination, based on race (Black/African American) and/or National Origin (United States of America).

1

**Venue**

1.      Venue is proper in the U.S. District Court for the Southern District of Texas, Houston Division.  Venue in this Court is provided for in any district in which the private employer of the person maintains a place of business pursuant to 28 U.S.C. § 1391(b). A substantial part, if not all, of the cause of action accrued or arose in the Southern District of Texas. Defendant maintains sufficient business contacts within a county in the Houston Division. Furthermore, the Plaintiff resided within the Houston Division during the pertinent time period in question.

**Parties**

2.      Laurence Williams ("Laurence", Black/African American) is a United States citizen and was residing in Texas during the relevant time period of Laurence's claims.  At all times material hereto, Laurence was an employee of Defendant, as understood and defined by Title VII and Section 1981.

3.      Superior Katy Car Wash, LLC is corporation ("Defendant").  It may be served with this lawsuit by serving its registered agent for service of process, Bawla & Bawla, 5314 Macquarie Point Lane, Sugar Land, TX 77479. At all times material hereto, Defendant was Laurence's employer, as understood and defined by Title VII and Section 1981.

## Facts[1]

4.      Laurence began his employment with Defendant on or about November 2018 as a Car Production Worker, who's primary job function was to wash cars. Laurence walked a total of approximately 14 miles to and from work each day (7 miles each way). Despite having to walk to and from work, Laurence usually arrived to work earlier than most of his coworkers and management.

5.      At the time Laurence began working for Defendant, new ownership had recently purchased the Defendant from another owner. The prior manager, for the prior owner, resigned and took most of the people she had hired with her. As a result, Defendant was severely under staffed. An individual by the name of Jorge Avilez took over as the Manager of Defendant.

6.      Prior to being hired by the Defendant, Laurence came to know that Mr. Avilez was in desperate need of new hires because the prior Manager had taken most of the employees with her when she resigned. Laurence and a friend of his named Michael Patterson, went to the store and spoke to Mr. Aviles. To encourage Laurence to work for the Defendant, Mr. Aviles promised Laurence a higher pay rate, more hours and a supervisor position. After Mr. Patterson and Laurence agreed on Mr. Avilez's terms, Laurence was hired.

7.      Soon after being hired, the work environment was fine, but after a month or so passed, Mr. Avilez still had not given Laurence a higher rate of pay as promised. Not only did Laurence not receive a pay increase, Mr. Avilez gave

---

1   These facts are by no means exhaustive.

Laurence significantly less hours to work than Laurence's similarly situated Hispanic coworkers. In fact, on most days, Laurence would arrive to work before his Hispanic coworkers, but Mr. Avilez would still make Laurence wait to clock in until after the Hispanic coworkers clocked in. Mr. Avilez made Laurence wait as much as 3 hours at the car wash before allowing him to clock in.

8.    The car wash was divided up into several different stations, which included the vacuum station, detail station and dry off station. Mr. Avilez allowed the Hispanic workers to alternate between stations, which allowed them to earn more, because some stations garnered more tips then others.  For example, the last station the cars would go through was the dry off station, which was the station that workers would receive the most tips. However, Mr. Aviles would not allow Laurence the same opportunities to work at the stations that generated more tips compared to his Hispanic coworkers.

9.    Approximately three months passed, and none of the promises Mr. Avilez made to Laurence, prior to Laurence agreeing to work for Defendant, were met. Adding insult to injury, Mr. Avilez started hiring new undocumented workers, who were all Hispanic, and from other countries. These new employees also received higher pay and some were promoted, while Laurence's pay remained the same and he never received a promotion, despite having 3 years of experience in the car wash industry.

10.    At the same time Laurence was being treated differently than his undocumented Hispanic coworkers, Mr. Avilez made Laurence train them on

the vacuum station. Mr. Avilez would tell Laurence that helping his Hispanic coworkers would lead to him being promoted, but again that empty promise never came to fruition. When Laurence would complain about how he was being discriminated against and/or that he wanted to speak to the owner, Mr. Avilez would send him for the day or threaten to fire Laurence.

11.     In addition to the discriminatory actions of Mr. Avilez, Laurence's Hispanic coworkers subjected him to a hostile work environment. They didn't like working along-side Laurence because he was an American citizen and African-American/Black. Laurence's Hispanic coworkers would say racial slurs in Spanish, on a daily basis, towards Laurence, including but not limited to Stupido Negro (Black Stupid Nigger), Pinche Chongo (Fucking Monkey), Pinche Mayate (Fucking Nigger) and Jodido Perezoso Negro (Fucking Lazy Nigger). Laurence would repeatedly complain, on a weekly basis, to Mr. Avilez of the discriminatory hostile behavior of his coworkers but Mr. Avilez did nothing to stop it. In fact, Mr. Avilez told both Laurence and Mr. Patterson that he doesn't promote Black employees to supervisor positions because he can't trust them. Mr. Avilez would also repeatedly call Laurence stupid and dumb, in Spanish, in front his coworkers and customers.

12.     On or about March 10, 2019, Laurence once again complained to Mr. Avilez about the discriminatory hostile work environment he was being subjected to on a daily basis. Mr. Avilez finally agreed to let Laurence speak to the owner of the Defendant. After his conversation with Mr. Avilez that day, Laurence walked outside and a Hispanic coworker named Clato came outside and

started yelling at Laurence. Clato threatened Laurence's life by yelling that he will get his sons to kill Laurence and then he will go back to Mexico. It is highly suspect that right after Mr. Avilez finally agreed to let Laurence speak to the owner, he was retaliated against by Clato. This was not the first time that Clato yelled at Laurence and threatened his life. Mr. Avilez was aware that Clato had threatened Laurence's life in the past. On this day, Clato and three other Hispanic coworkers ganged up against Laurence but only Laurence was told to go home and come back on Monday.

13.    On or about Monday March 11, 2019, Laurence returned to work and met with the owner of Defendant for the first time. Laurence explained to the owner the severe and pervasive racially charged hostile work environment that he was being subjected to on a daily basis. Laurence also explained to the owner the many different ways Mr. Avilez was treating him differently than his Hispanic and Non-American coworkers. After hearing what Laurence had to say, the owner stated he won't go against Mr. Avilez and advised Laurence that Mr. Avilez made the decision to terminate Laurence and that he agreed with Mr. Avilez's decision. Laurence was summarily terminated from his employment with the Defendant on this day.

14.    Defendant's action of terminating Laurence, subjecting him to a hostile work environment and not affording him the same opportunities for growth within the company are motivated by his Race and National Origin and Defendant's actions are willful.

**CAUSES OF ACTION**

15.     Plaintiff hereby incorporate all facts stated in the preceding paragraphs as if set forth fully herein.

**Race Discrimination and Retaliation under Section 1981**

16.     Defendant has intentionally discriminated against Plaintiff based on his race (Black/African American), subjected Plaintiff to a hostile work environment and terminated Plaintiff due to his race in violation of Section 1981.

17.     Plaintiff opposed discriminatory conduct that was in violation of Section 1981. Specifically, he complained of race discrimination and was unlawfully terminated and subject to an increasingly hostile work environment after he made his discrimination complaints.

18.     As a result of Defendant's actions in violating provisions of Section 1981 as described herein, Plaintiff has suffered and continues to suffer a loss of wages, benefits and other compensation due in the past and which will be suffered and due in the future.

**Race Discrimination, National Origin Discrimination and Retaliation under Title VII**

19.     Defendant's intentional discrimination against Plaintiff was motivated by his race (Black/African American) and national origin (United States of America). Defendant subjected Plaintiff to a hostile work environment and terminated Plaintiff in violation of Title VII.

20.     Plaintiff opposed discriminatory conduct that was in violation of Title VII. Specifically, he complained of race and national origin discrimination and was unlawfully terminated and subject to an increasingly hostile work

environment after he made his discrimination complaints.

21.     As a result of Defendant's actions in violating provisions of Title VII as described herein, Plaintiff has suffered and continues to suffer a loss of wages, benefits and other compensation due in the past and which will be suffered and due in the future.

### DAMAGES

22.     Plaintiff seeks actual damages, including but not limited to lost wages and benefits.

23.     As a result of Defendant's intentional, discriminatory and unlawful acts described above, Plaintiff has suffered and continues to suffer actual damages and compensatory damages including but not limited to mental anguish, humiliation, emotional distress and damage to his professional reputation, all to his detriment and compensable at law.  Plaintiff also sues for the recovery of punitive damages as authorized by statute.

24.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this action for preliminary and permanent injunction is the only available means of securing adequate relief.  Plaintiff presently suffers and will continue to suffer irreparable injuries from Defendant's policies, practices, customs, and usages set forth herein.

25.     The effect, purpose and intent of the policies and practices pursued by Defendant has been and continues to be to limit, classify, and willfully discriminate against employees on the basis of their race and national origin and otherwise adversely affect their status as employees because of same.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court advance this cause on the docket, order a speedy trial at the earliest practicable date and cause this case in every way to be expedited and upon such hearing to:

i. Grant Plaintiff a preliminary and permanent injunction enjoining Defendant, its agents and employees and those acts from continuing to maintain the policies, practices, customs or usages which discriminate against Plaintiff because of race and national origin or otherwise deprive Plaintiff of his rights and privileges secured by Federal Law.

ii. Grant Plaintiff a declaratory judgment that the practices, policies, customs and usages complained of herein are violative of his rights protected by Section 1981 and Title VII.

iii. Order the Defendant to grant Plaintiff additional equitable, actual and compensatory relief, requiring said Defendant to make Plaintiff whole, including but not limited to promotions, back pay and front pay including all accrued interest, insurance benefits, pension benefits, bonuses, vacation benefits, sick leave, and other incidental benefits that attach to and were incidental to Plaintiff's employment with Defendant and incidental to each such position sought by Plaintiff, as authorized by statute.

iv. Order the Defendant to pay Plaintiff compensatory damages.

v. Order the Defendant to pay Plaintiff punitive damages.

vi. Grant an Order restraining Defendant from any retaliation against Plaintiff for participation in any form in this action.

vii.    Grant Plaintiff his costs incurred herein, and as part of such costs, reasonable

Attorneys' fees and Expert witness fees and such further, additional or alternative

relief and affirmative action orders as may appear equitable and just.


Respectfully submitted,

By:    /S/ Ashok Bail
ASHOK BAIL
The Bail Law Firm, PLLC
STATE BAR #24043541
3120 Southwest Freeway, Suite 450
Houston, Texas 77098
(832) 216-6693 (Tel)
(832) 263-0616 (Fax)
ashok@baillawfirm.com

ATTORNEY FOR PLAINTIFF